**FEDERAL–RADOROCK–GAS HILLS PARTNERS, Petitioner,**

v.

**UNITED STATES ATOMIC ENERGY COMMISSION and the United States of America, Respondents.**

No. 7064.

United States Court of Appeals
Tenth Circuit.

Dec. 21, 1962.

H. T. Benson, Salt Lake City, Utah (Leonard J. Lewis and Vancott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, on the brief), for petitioner.

Barbara Deutsch, Atty., Dept. of Justice (Joseph D. Guilfoyle, Acting Asst. Atty. Gen., and Morton Hollander, Atty., Dept. of Justice, on the brief), for respondents.

Before BRATTON, LEWIS and SETH, Circuit Judges.

BRATTON, Circuit Judge.

Seeking to invoke the jurisdiction of this court under 5 U.S.C. § 1032, 5 U.S.C. § 1034, and 42 U.S.C. § 2239, Federal-Radorock-Gas Hills Partners, hereinafter referred to as petitioner, lodged in this court a petition to have reviewed a final order of the United States Atomic Energy Commission, hereinafter referred to as the commission, affirming a refusal to transfer to subsequent years delivery of approximately 360,000 pounds of uranium concentrate which should have been delivered prior to June 30, 1960, under a contract between petitioner and the commission. The commission and the United States were joined as respondents. Respondents filed a motion to dismiss the petition for review. And the proceeding is pending on the petition and the motion to dismiss.

Petitioner is a partnership organized and existing under the laws of Wyoming.

In April, 1959, petitioner and the commission entered into a written contract in which it was provided that petitioner should within eighteen months thereafter construct at a specified location a uranium ore processing plant having a capacity to process approximately 522 tons of uranium-bearing ore daily. Except under circumstances not having any present bearing, the contract provided that all uranium concentrate produced at the plant during the period ending December 31, 1966, should be delivered to the commission. It provided that a specified yearly maximum poundage should be accepted by the commission and it fixed the price to be paid therefore. It provided that petitioner should not be responsible for failure to perform any requirement thereunder when such failure was due to fire, floods, strikes, wars, or for any other disabling cause beyond petitioner's control and which could not be reasonably forecast or provided against by petitioner, or for any action or requirement of the United States which prevented performance. It specified administrative procedure for the settlement of questions of fact arising thereunder. And it provided that any administrative determination made under such procedure should be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, arbitrary, capricious, or so grossly erroneous as necessarily to imply bad faith, or was not supported by substantial evidence. In October, 1959, the commission issued to petitioner a license which followed generally the applicable law and regulations. The license authorized petitioner to receive possession of and title to raw and refined source material at the mill, for resale and for processing with raw source material from petitioner's own mining operation. And it authorized petitioner to transfer and deliver possession of and title to refined source material to any person licensed by the commission, within the limits of his license. It further provided that the issuance thereof did not constitute any agreement by the commission to purchase ores and/or concentrates or other products from petitioner. And it further provided that it was subject to all of the provisions of the Atomic Energy Act of 1954 then or thereafter in effect, and to all valid rules and regulations of the commission.

The plant was constructed and operations began in October, 1959. Prior to such construction, the uranium industry generally used a so-called resin-in-pulp basket process for milling uranium-bearing ore of the kind owned and controlled by petitioner. But petitioner did not design and construct its plant in a manner adapted to that process. Its rejection of that method of treatment of ore was based upon the ground that it was too expensive and required excessive capital cost. In designing and constructing its plant, petitioner installed a process known as the Infilco process. Due to difficulties in the construction of the plant, to the necessity for betterments, and to rates of recovery of concentrate less than that contemplated, petitioner was unable to deliver during the first year the specified maximum poundage of concentrate. Petitioner sought administrative relief under the contract. It submitted to the commission a request that approximately 360,000 pounds of concentrate which it had been unable to deliver during the first year of operation of the mill be transferred to the amount to be purchased in the second year's operation. The basis of the request was that the disabling cause for the nondelivery during the first year of operation was beyond petitioner's control and could not be reasonably forecast, or provided against by petitioner. The commission's contracting officer issued a decision denying petitioner's request for relief. Petitioner appealed and requested a hearing. The hearing was held and the hearing examiner decided that the decision of the hearing officer should be affirmed. The commission entered its order denying the petition for review of the decision of the examiner. And the petitioner then brought the controversy to this court on

its petition to have the order of the commission reviewed.

The essence of the primary contention urged by petitioner for judicial review of the order of the commission is that the refusal to allow petitioner to deliver during the second year of operations the undelivered portion of the poundage specified for delivery during the first year effectuated a wrongful invasion of the rights of petitioner under the license. The substance of the argument advanced is that by such refusal, the license was revoked and suspended pro tanto. In support of the argument, petitioner says that the contract and license were parts of a single transaction and that the license authorized petitioner to carry out the terms of the contract. But the license did not contain such a provision. It merely authorized petitioner to receive title and possession of raw and refined source material for processing and resale. These privileges under the license were not narrowed, suspended, revoked, or terminated in whole or in part by the order of the commission. And when the license is considered as a whole, including the language specifically providing that the issuance thereof should not constitute any agreement to purchase ores or concentrate or other products, it cannot be said that the order constituted any diminution of obligation on the part of the commission under the license. The obligation of the commission to purchase concentrate is found in the contract, not the license. And if in the circumstances, petitioner had the right to deliver during the second year of operation any part of the concentrate which should have been delivered during the first year, that right had its source in the contract, not the license. There is no present need to explore the question whether the order of the commission impinged upon such right, and if so, whether petitioner is entitled to relief in the form of monetary reparation. No question of that kind is presented. It suffices to say that petitioner is not entitled to judicial relief in the form of an order of this court narrowing, vacating, setting aside, or terminating, in whole or in part, the order being challenged by the petition under consideration.

The petition is denied.